UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Netherlands Ins. Co. | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 10-4043 SLD/JAG |
| | ) | |
| National Casualty et al, | ) | |
|     Defendants | ) | |

**ORDER**

Now before the Court are four motions to compel (#124, 125, 126 and 138). In those motions, Defendant/Third Party Plaintiff National Casualty Company seeks to compel discovery responses from MPC Enterprises, Continental Casualty Company, Netherlands Insurance Company and W.W. Transport Inc.. The motions are now fully briefed, and I have carefully considered the arguments of the parties. As stated herein, the motions are DENIED.

FACTS AND PROCEDURAL POSTURE

In two underlying lawsuits[1] (filed on August 28, 2008 and April 15, 2010), the Plaintiffs alleged that they were injured in a car-truck collision. They sued Dean Becker, who owned the truck and was driving at the time of the accident, and Smithway Motor Xpress Inc. ("SMX"), which had leased Beckler's tractor. Third partied into the action were MPC Enterprises Inc. ("MPC"), which had hired SMX to transport its cargo, and W. W. Transport Inc. ("WWT"), the owner of the trailer. The claims against Beckler and SMX included prayers for punitive damages.

---

[1] See Central District of Illinois cases, Knight v. Beckler, Case No. 08-4046; and Knight v. Beckler, Case No. 10-4039.

At the time of the accident, National had issued a commercial auto liability policy to SMX (which also included Beckler as an additional insured). Netherlands had issued a business auto policy to MPC, who was also an insured under a commercial umbrella liability policy issued by Hawkeye-Security Ins. Co. ("Hawkeye"). Continental had issued a commercial auto liability policy to WWT, who was also an insured under a commercial umbrella liability policy issued by Discover Property & Casualty Insurance Company ("Discover") and a following-form excess umbrella liability policy issued by Lexington Insurance Co. ("Lexington").

The underlying actions were resolved following settlement conferences on July 26 and 27, 2011. Netherlands, National and Continental, plus SMX[2] itself, contributed to a fund that was paid out to settle all the Plaintiffs' claims in the underlying actions. The final settlement stipulation was filed on Oct. 13, 2011, and the cases were closed on that date.

The case at bar was filed on May 19, 2010, while the underlying actions were still pending. The settlement agreement included a reservation of rights by those who had paid into the fund, as against each other and other potential insurers. The case at bar seeks determination of those rights reserved.

The pleadings in this case were amended following settlement of the underlying cases. The documents that currently govern the case at bar are: amended complaint by Netherlands against National and Continental (#91); amended counterclaim, cross-claim and third party claim by National against Netherlands, Continental, Discover, Hawkeye, and Lexington (#83); amended counterclaim against National and Netherlands by Continental (#86); and amended counterclaim against Netherlands and Continental by Dean Beckler (#88).

---

[2]SMX contributed its self insured retention amount.

The schedule in this case was vacated and amended on January 25, 2012. Less than a month later, on Feb. 21, three of the pending motions to compel were filed; the fourth was filed on March 29. They are fully briefed.

## DISCUSSION

### *PRELIMINARY MATTERS*

A.   Is MPC a party?

In the motion to compel directed to MPC, National asserts that it sent written discovery to MPC on August 19, 2011, a date falling after settlement had been reached in the underlying cases but before the amended pleadings had been filed. When no answers to that discovery were received, counsel for National sent a letter dated Feb. 6, 2012 to counsel for MPC.

Counsel for MPC responded via email that same date that it was not a party to this action and declined to provide answers to the written discovery. Although MPC was named as a party in the initial pleadings[3], none of the currently-extant pleadings has named MPC as a party. As of November of 2011, in other words, MPC was no longer a party in this case.[4] National then served subpoenas on MPC, requesting the same documents. MPC responded to the subpoena, in pertinent

---

[3] National filed both a counter-claim (#60) and a third party claim(#66) against MPC; the two documents are identical. This anomaly has not been explained and is now of no consequence, given the amended pleadings that have replaced these two documents.

[4] National points out that MPC has never been "dismissed" from this case. While technically true, there are no claims pending against MPC, so as a legal matter, it is no longer a party. The fact that the Clerk has not yet "terminated" MPC as a party is a ministerial issue. When the clerk updates the docket in this case, MPC will show up as a "miscellaneous party," the title utilized by the electronic case filing system. That does not make MPC a party in the sense of being obligated to respond to discovery requests. The fact that counsel has entered an appearance on behalf of MPC has no significance other than reflecting the pendency of the instant motion to compel.

part raising the objections of attorney-client privilege or work product protection, issues identical to those raised by Netherlands and discussed below.

2. Does Iowa law control the motion directed to Continental and its insured WWT?

In Continental's and WWT's responses to the motion to compel, they assert that Iowa law, not Illinois law, controls the dispute about attorney-client privilege. The basis of this argument is that Iowa law does not apparently recognize the holding in the primary case on which National relies for its argument that there is no attorney-client privilege applicable here. Because I conclude below that that case does not apply under the facts here presented, it is unnecessary to resort to Iowa law for resolution of this issue.

3. General nature of this Order

The motions are directed against Continental, Netherlands, MPC and WWT. Except as discussed above, the substance of these motions raises the same legal questions, namely whether the documents and answers sought are protected by either the attorney-client privilege or the work product doctrine or both.

These motions did not identify particular interrogatories or requests for documents, dealing only with the overriding legal questions. Because the discovery in question is extensive, this Order will resolve the legal issues but will not purport to identify the individual interrogatories or document request to which it applies. The Court is confident that the parties will be able to apply the rulings herein to specific discovery requests. If, following this Order, there remain specific interrogatories or document requests in dispute, the parties may file followup motions focusing on and briefing the issues specific to each of those disputes.

### *ATTORNEY-CLIENT PRIVILEGE*

The Federal Rules of Civil Procedure provide that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). A party declining to produce discovery on the grounds that it is privileged has the burden of establishing the existence of the privilege as well as its applicability in the particular situation. Bank of America v. Veluchamy, 643 F.3d 185 (7th Cir. 2011); U.S. v. Tratner, 511 F.2d 248, 251-52 (CA7 1975); F.T.C. v. Shaffner, 626 F.2d 32, 37 (7th Cir.1980).

Privileges are construed narrowly and the requirements for establishing privilege are strictly enforced, because privileges are viewed as being in derogation of the search for truth. University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990); U.S. v. Nixon, 418 U.S. 683, 710 (1974); Valero v. U.S., 569 F.3d 626, 630 (7th Cir. 2009); U.S. v. BDO Seidman, LLP, 492 F.3d 806, 815 (7th Cir. 2007). A privilege is therefore applied only where necessary to achieve its purpose, BDO Seidman, 492 F.3d at 815, and only where it "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel v. U.S., 445 U.S. 40, 50 (1980).

The Federal Rules of Evidence provide that, in a case for which state law supplies the rule of decision, state law also governs privilege. Fed.R.Evid. 501. This case is before this Court based on the Court's diversity jurisdiction, so Illinois' substantive law of privilege governs.

The Illinois Supreme Court has set forth the elements of the privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. People v. Simms, 192 Ill.2d 348, 381 (Ill.2000).

Both parties have discussed at some length an Illinois Supreme Court case that appears to raise attorney-client privilege in factual circumstances similar to those in the case at bar. In Waste Management Inc. v. Internat'l Surplus Lines Ins. Co., 579 N.E.2d 322 (Ill.1991), two insurers issued policies to their insureds, providing indemnity to the insureds for defense costs arising out of any claim arising out of environmental impairment brought by third parties. The duty to indemnify was subject to the insureds' duty to cooperate. In addition, the insurer had the right - but not the duty - to defend.

The insureds owned hazardous waste disposal sites, one of which was the subject of litigation (the "Miller litigation"). Specifically, the plaintiffs in the Miller litigation alleged that the disposal site was responsible for personal injury and property damage due to migration of toxic wastes. While that litigation was pending, the prior owners of the site also sued the insureds (the "Nunn litigation"). The insureds countersued, alleging negligent design, construction and operation of the site. The insureds obtained a judgment against the prior owners and thereafter settled with some of those prior owners for part of the judgment amount. In addition, the insureds retained counsel in the Miller litigation, which ultimately settled. The insureds sought indemnification for the costs of settlement and defense. The insurers denied coverage.

Both insureds and insurers filed declaratory judgment actions, which were consolidated. Insurers alleged that the insureds failed to notify them of the Nunn litigation, which was a breach of the cooperation clause. During discovery, insurers requested production of defense counsels files from the underlying Miller and Nunn litigations. While parts of the Miller files were produced, work product and attorney-client privilege were asserted as to the remainder and to the entire Nunn files. The trial court ordered production of the Miller litigation files but denied production of the Nunn files. The appellate court affirmed in part and reversed in part and ordered an *in camera* inspection

of the documents. The State's Supreme Court granted the insureds' petition for leave to appeal. The parties agreed that resolution of the privilege issues as to the Miller documents would "govern the parameters of production" for the remainder of disputes.

The Court began with the general rule that documents privileged from disclosure at trial may not be discovered, 134 Ill.2d R.201(b)(2), and then proceeded to summarize the State's law of attorney-client privilege as follows:

> The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information. However, the privilege is not without conditions, and we are mindful that it is the privilege, not the duty to disclose, that is the exception. Therefore, the privilege ought to be strictly confined within its narrowest possible limits. Further, the attorney-client privilege is limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such. Finally, we note that in Illinois, we adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.

Waste Management, 579 N.E.2d at 326-27.

Applying that law, the Court rejected the argument that the attorney-client privilege had any bearing on the case. The "broad duty of cooperation" imposed by the policy negated any contention that the insureds were not required to disclose to their insurer the communications with the attorneys representing them on a claim for which the insurer had the ultimate duty to satisfy. Any expectation that those files would be confidential as to the insurer was unreasonable. Id. at 327-28.

The Court also found that the "common interest" doctrine precluded the insureds from asserting the attorney-client privilege. That doctrine holds that when an attorney acts for two different parties sharing a common interest, communications by either party to the attorney may not be privileged in a later dispute between the two parties. Because the insurers and the insureds had a common interest in either defending or settling the Miller litigation, communications by the

insureds with defense counsel were reasonably calculated to protect or further those common interests. 579 N.E.2d at 328.

The Court pointed out that its discussion had no pertinence to documents that were created for the declaratory judgment action; those documents remained subject to the privilege. The matter was therefore remanded to the lower court for an *in camera* inspection so that such documents could be excluded from production. 579 N.E.2d at 331-32.

Waste Management has generated much discussion and criticism[5], but it remains the law in Illinois. It does not, however, support National's contention that the discovery at issue in the case now before this Court should be compelled.

The first underlying premise of Waste Management - that the duty to cooperate mandates disclosure to the insurer of the insured's files - only applies when there is such a duty in the first instance. The duty, said the Waste Management Court, is "defined and controlled by the terms of the insurance contract." Id. at 327. In the case before this Court, however, there is no contract between National and Netherlands, between National and Continental, between National and WWT or between National and MPC. There is no contractual duty on the part of any of these entities to cooperate with any of the others. Because National was owed no duty of cooperation by any of the entities from which it has sought discovery, it cannot rely on that duty to make an end run around the attorney-client privilege that has been asserted.

Similarly, at the time the defense files and other disputed documents were created, National (who insured SMX and Beckler) had no common interest with WWT or its insurer Continental, or with MPC or its insurer Netherlands. In the underlying litigation, Smithway filed a third party action against WWT and MPC, and MPC filed a counter claim against WWT. Unlike the parties in Waste

---

[5]See discussion in Allianz Ins. Co v. Guidant Corp., 869 N.E.2d 1042 (Ill.App. 2007).

8

Management, the attorneys representing these parties and insurers were clearly adverse in their interests. They were not acting in commonality of interest with National and the common interest doctrine has no applicability to the privilege that has been asserted.

Commonality is not somehow created, as argued by National, by the fact that these entities worked together to settle the underlying cases. The case cited by National, Illinois Emcasco Ins. Co. v. Nationwide Mut. Ins. Co., 913 N.E.2d 1102 (Ill.App.2009) is not to the contrary. In that case, an insurer sued a second insurer, seeking to apply the second insurer's policies to pay in part a judgment against their mutual insured. The second insurer sought to compel production of correspondence with coverage counsel, relying on the common interest doctrine. After discussing Waste Management, the Emcasco Court held that the common interest doctrine applied because the two insurance company and the insured "shared a common interest in settling or defeating" the underlying claim.

The difference - and it is significant - between Emcasco and the parties involved in the pending motions is that, in the instant case, the insurance companies have different insureds whose legal positions were at all times adverse to each other, even as they worked together to try to reach settlement. That there was a common goal of settlement did nothing to destroy those adverse relationships. These adverse relationships continued to exist, as demonstrated by this lawsuit: the entities that contributed to the settlement fund reserved their rights as against each other. The settlement itself did not resolve the disputes about those rights.

Neither the duty to cooperate nor the doctrine of common interests applies to avoid the attorney-client privilege asserted in this case.

9

***WORK PRODUCT DOCTRINE***[6]

Unlike the claim of attorney-client privilege, the claim of work-product protection is governed by federal law. See Fed.R.Civ.P. 26(b)(3). The doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.P. 26(b)(3)(A). It is designed to protect from the opposing party the mental processes of an attorney, providing a privileged area in which the attorney can analyze and prepare a client's case. U.S. v. Nobles, 422 U.S. 225, 238 (1975).

National presses one of the same arguments as to how this doctrine should apply as it did with respect to attorney-client privilege, namely, the commonality of interest between insurer and insured. In support of that motion, National cites Abbot Labs v. Alpha Therapeutic Corp., 200 F.R.D. 401, 410 (N.D.Ill.2001). As was the case with the cases cited above, however, in Abbott Labs, the plaintiff and the defendant were contracting parties, so there were contractual duties that prevented invocation of work product protection.

National also cites extensively from an article, Epstein, Edna Selan, The Attorney-Client Privilege and the Work Product Doctrine, vol.2, 1023 (5th ed. ABA 2007). This particular quotation, however, is not supportive of National's position. Nothing in that quotation supports the proposition that work product protection of documents generated between an insurer and its insured can be abrogated by another insurer that has no policy or contract connection with the insured, simply because they cooperated to settle an underlying lawsuit.

---

[6]After making its objections and an initial production, Continental made a supplemental production and withdrew its work product doctrine objections. Netherlands continues to assert this doctrine.

10

The documents and information sought are protected by work product, and that protection is not negated by commonality of interest. Rule 26 provides that discovery otherwise protected as work product may nonetheless be disclosed if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(ii).

In a single rather cryptic paragraph, National asserts that "it is clear" that the defense files contain information about defense counsel's evaluation of exposure to punitive damages, and that there is no other way to discern this issue other than by discovery of the insureds' communication with their defense counsel in the underlying actions. In the introductory section of its brief, National opined that this information is crucial because its policy is the only policy that has an exclusion for punitive damages. The settlement eliminated "the exposure to punitive damages" of the other insurers and their insureds. Hence, argues National, "it is clear that punitive damages were a significant liability exposure" in the underlying litigation "and made up a significant portion of the settlement."

> Given the amount of the settlement paid ... it is clear that there would have been some evaluation of the damage exposure prepared by defense counsel for [the insured] and transmitted to [the insurer] prior to the settlement. If [the insurer] is allowed to maintain its assertion of work produce, it will be impossible to discern Continental's actual knowledge of exposure for punitive damages. It is only through communications with [the insureds'] defense counsel that [the insurers] would have this information.

The only claims for punitive damages in the underlying actions were asserted against National's insureds SMX and Beckler; no punitive damages claims were asserted against Netherlands' and Continental's insureds, WWT and MPC. (See, Docs. #99, seeking leave to amend complaint to add punitive damages against SMX and Beckler). Because National's policy specifically excludes indemnification of punitive damages, while Netherlands' and Continental's

policies for WWT and MPC contain no such exclusion, National leaps to the conclusion that "Continental's and Netherlands' insurance policies [for WWT and MPC)] operate as primary for punitive damages." Hence, says National, the defense files showing how WWT's and MPC's defense counsel evaluated the potential for punitive damages awards is "crucial" to understanding why these two insurers paid as much as they did to settle the underlying cases. This leap of logic has been used by National to create the illusion that it has a "substantial need" for the defense files.

This leap of logic has been used by National to create the illusion that it has a "substantial need" for the defense files. Even were it true, however, that the need for these files was substantial, National's "no other mean's argument fails entirely. What was intended by the parties' to the settlement can certainly be ascertained by asking the parties themselves. There is no need to obtain the information created by their attorneys.

Whether it is because National has failed to show a substantial need for the underlying files, or because National has failed to show that it has no other way to obtain the information, its assertion that the defense files are not entitled to protection as work product is without merit. The statutory exception to work product protection does not apply, and the defense files remain protected.

## CONCLUSION

As stated herein, National's motions to compel are denied in their entirety. This case is set for a telephone conference on Wednesday, May 16, 2012 at 11:00 a.m. (Court will set up the call) at which time rescheduling of this case will be discussed. Counsel shall be prepared to state their agreement as to how much time is needed to complete discovery in this matter.

ENTERED ON April 27, 2012

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE